## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

WARDELL NEWSOME II                                                    PETITIONER

V.                                        NO. 5:14cv00215-KGB-JTR

WENDY KELLEY,[1] Director,                                           RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Proposed Findings and Recommended Disposition ("Recommendation") have been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

---

[1]Wendy Kelley became Director of the Arkansas Department of Correction on January 13, 2015, and is automatically substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

# I. Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus filed by Petitioner, Wardell Newsome II ("Newsome"). *Doc. 1.* Before addressing Newsome's habeas claims, the Court will review the procedural history of the case in state court.

In June 2006, a Pulaski County jury convicted Newsome and his co-defendant, Armon Houston, of first degree murder.[2] Newsome was sentenced to 420 months of imprisonment, and Houston to 480 months. *Doc. 6-2.*

Newsome and Houston filed a joint direct appeal. One of their arguments was

---

[2]According to the trial evidence, on the night of May 20, 2005, the body of Melvin Lunnie was found lying in the street. He had been shot in the back and also in the back of his left thigh. Six .40 caliber shell casings were found at the scene. These shell casings had been fired from the same weapon, which was believed to be a .40 caliber, semiautomatic firearm. A bullet fragment that was recovered from Lunnie's body had polygonal rifling, consistent with a Glock, H&K, or IMI weapon.

Irma Moragne gave a statement implicating Newsome and Houston in the murder, and identified them from separate photo spreads. At trial, she testified that: (1) she saw Newsome, Houston and Lunnie arguing around 10:00 p.m.; (2) Newsome and Houston were armed with handguns; and (3) as Lunnie was walking away, she heard shots and saw a flash from one of the guns.

Newsome's girlfriend, Bonnie Fuller, testified that he arrived at her home between 11:15 and 11:30 p.m. and told her someone had been killed. Prior to trial, Newsome wrote Fuller a letter asking her to ignore the subpoena commanding her presence at trial.

Newsome and Houston defended the charge primarily with an alibi defense. Several witnesses testified that both men were at a party when word spread through the neighborhood that Lunnie had been killed. Testimony was also presented from other witnesses that, after hearing shots, they observed a lone figure walking toward a dark-colored vehicle, which undermined Moragne's testimony that she saw Houston and Newsome drive away in a light-colored car. *See Houston & Newsome v. State*, No. CACR 06-1043, 2007 WL 1697318, at *1-*3 (Ark. Ct. App. June 13, 2007) (summarizing evidence).

that the trial court erred in prohibiting them from introducing evidence that, six months after the murder, Corey Bealer was found in possession of a Glock .40 caliber handgun, the same caliber weapon that killed the victim.[3] On June 13, 2007, the Arkansas Court of Appeals rejected the arguments for reversal, and affirmed the convictions of both Newsome and Houston. *Houston & Newsome v. State*, No. CACR 06-1043, 2007 WL 1697318 (Ark. Ct. App. June 13, 2007).

On August 31, 2007, Newsome filed a petition for post-conviction relief, under Ark. R. Crim. P. 37. *Doc. 6-4*. He argued that his trial counsel was ineffective because she: (1) failed to obtain ballistic testing on Bealer's .40 caliber Glock handgun; and (2) failed to conduct a sufficient pretrial investigation that would have revealed other evidence connecting Bealer to the murder.[4]

---

[3]Newsome's and Houston's trial lawyers did *not* retain an expert witness to perform ballistic testing on Bealer's handgun to determine if it was the murder weapon. Without any evidence linking Bealer's gun to the murder, the trial court ruled that the fact that Bealer was found with such a weapon six months after the murder "was too remote to have any relevance." *Id.* at *4.

[4]During a pretrial motion in limine hearing, evidence had been presented that: (1) Bealer and the victim had an ongoing dispute arising from Bealer now living with the victim's ex-girlfriend and their children; and (2) ten minutes before the murder, the victim's brother dropped him off at the corner of Fletcher and Sixth Streets, and the brother saw Bealer in the vicinity, but did not see either Newsome or Houston. *Doc. 6-4, at 1-2.*

In Newsome's Rule 37 petition, he alleged that a subsequent investigation had revealed: (1) a witness who would testify that he saw Bealer shoot the victim, and that neither Newsome nor Houston was present; (2) a witness who saw the State's eyewitness, Irma Moragne, seven blocks from where she claimed she saw the murder take place; and (3) a witness who would testify that, shortly before the murder, the victim asked to borrow a pistol to protect himself from Bealer, who had just confronted him. *Id. at 2-3.*

Houston also filed a Rule 37 petition, arguing that his trial attorney was ineffective for the same reasons stated by Newsome in his Rule 37 petition.

On December 15, 2008, the trial court conducted a *joint evidentiary hearing* on the Rule 37 petitions filed by Newsome and Houston.[5] At the hearing, Newsome's attorney presented testimony from a firearms expert, who testified that: (1) comparison of a bullet fired from the handgun taken from Bealer, with bullet fragments from the victim's body, was "inconclusive"; but (2) *the cartridge casings, recovered from the murder scene, had all been fired from the handgun taken from Bealer six months after the murder.*[6] *Doc. 6-5, at 5-6; see Rule 37 Tr. at 117-18.*

Houston's attorney presented no evidence during the joint Rule 37 hearing, but he did move to "join in all of [Newsome's] arguments." *Rule 37 Tr. at 67; see also Doc. 6-11, at 3-4; Doc. 1, at 2, 6-7.*

On February 13, 2009, the trial court entered separate orders denying Rule 37 relief to Newsome and Houston. *Doc. 6-5.* They each filed *separate appeals* to the

---

[5]The transcript of the Rule 37 hearing was submitted, in Newsome's first § 2254 action, as Respondent's Exhibit G. *Newsome v. Hobbs*, E.D. Ark. No. 5:11cv316-JMM, *doc. 9* ("Rule 37 Tr.").

[6]During the trial, the murder weapon was not introduced into evidence, and there was no testimony or evidence about the handgun taken from Bealer. Because Newsome's and Houston's trial counsel did not hire a ballistics expert to test Bealer's handgun, no one was aware during their trial that it almost certainly was the murder weapon.

Arkansas Supreme Court.[7]

In Newsome's Rule 37 appeal, he again argued that trial counsel was ineffective for failing to retain a firearms expert to test the handgun found in Bealer's possession. The testimony of Newsome's firearms expert, presented during the Rule 37 hearing, made it clear that, if Newsome's trial attorney had retained a similar expert, she would have learned, *prior to Newsome's trial*, that the .40 caliber Glock found in Bealer's possession had fired all of the shell casings found at the murder scene. *Doc. 6-7.*

In an opinion dated November 3, 2011, the Arkansas Supreme Court held that, under the standard for evaluating ineffective-assistance-of-counsel claims set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), Newsome's attorney was not ineffective in this regard:

> Here, an expert in firearms testified [at the Rule 37 hearing] that he compared Bealer's weapon with the shell casings recovered from the murder scene and concluded that the shell casings had markings that appeared to match the breech face of the handgun. Thus, the murder weapon in Bealer's possession raised an inference of third-party guilt. *According to trial counsel, she chose not to have Bealer's weapon tested because the tests might have excluded the gun as the murder weapon. In that instance, she could not have continued to suggest that Bealer was the perpetrator.* Clearly, this evidence supports the circuit court's determination that defense counsel's decision was a strategic one and not an omission resulting in ineffective assistance of counsel. We have recognized that trial counsel must use his or her best judgment to determine which witness will be beneficial to the client. Because of the

---

[7]Newsome's appeal, filed through counsel, was docketed as Ark. Sup. Ct. No. CR 09-625. Houston's appeal, filed *pro se*, was docketed as Ark. Sup. Ct. No. CR 09-315.

subjective nature of professional judgment, questions of trial strategy are not grounds for relief under Rule 37.1

*Newsome v. State*, 2011 Ark. 465, at 3 (per curiam) (emphasis added; citations omitted). The Court went on to conclude that Newsome's other ineffective-assistance claims were also meritless. *Id.*

On its face, the testimony of Newsome's attorney, on which the Arkansas Supreme Court relied to deny Rule 37 relief, makes little sense. According to her, she decided, as a matter of "trial strategy," *not* to have Bealer's .40 caliber Glock tested, because if the gun was excluded "as the murder weapon ... *she could not have continued to suggest Bealer was the perpetrator*." [Emphasis added.] To the contrary, even if that gun had been ruled out as the murder weapon, she still could have argued that Bealer was the perpetrator. She had evidence the victim and Bealer were having an ongoing dispute arising from Bealer now living with the victim's ex-girlfriend and their children. She also knew that, ten minutes before the murder, the victim's brother saw Bealer in the vicinity of the murder, but did not see Newsome and Houston. This evidence (which Newsome's attorney developed during a pretrial hearing on a motion in limine) established that Bealer had a motive and the opportunity to commit the murder. Furthermore, the fact that Bealer later was found to be in possession of a .40 caliber Glock proved that he knew how to obtain a handgun and, by possessing it, he seemed to be prepared to use it.

Thus, even if ballistic testing had proved that Bealer's gun was *not* the murder weapon, Newsome's counsel still would have been free to argue that Bealer (who had the motive and opportunity) killed the victim, disposed of the .40 caliber pistol he used to commit the murder, and then obtained another .40 caliber handgun. *Thus, regardless of the outcome of the ballistic tests on Bealer's gun, Newsome's "third party guilt" defense would have still been viable and intact.*

However, if the ballistic testing proved (as it later did) that Bealer's Glock was the probable murder weapon, Newsome would have been in an excellent position to be acquitted. Thus, there was *tremendous potential upside and virtually no downside* to Newsome's attorney hiring a firearms expert to perform ballistic testing on Bealer's Glock.

Finally, in addition to Newsome's third party guilt defense, which was tied to Bealer being the perpetrator, Newsome also had an alibi defense. This further erodes Newsome's trial counsel's Rule 37 testimony that, if the ballistic test results were negative, she would have been unable to mount any viable defense.

It appears the Arkansas Supreme Court simply accepted as true the Rule 37 testimony of Newsome's trial attorney that it was part of her "trial strategy" not to obtain ballistic testing to determine if Bealer's gun was the murder weapon. In fact, there was *nothing* strategic or tactical about that decision, which raises serious

questions about whether it constituted constitutionally ineffective assistance of counsel under *Strickland*.

On December 12, 2011, Newsome filed a § 2254 habeas action in the Eastern District of Arkansas, *Newsome v. Hobbs*, E.D. Ark. No. 5:11cv316-JMM. He raised the same grounds for relief that he had raised in his Rule 37 appeal to the Arkansas Supreme Court, including his claim that trial counsel was ineffective for failing to retain and call a firearms expert to establish that Bealer's handgun was the murder weapon. *Id., doc. 1*.

On October 2, 2012, the assigned United States Magistrate Judge entered a "Proposed Findings and Recommended Disposition" that concluded the Arkansas Supreme Court did not unreasonably apply the *Strickland* standard in adjudicating Newsome's ineffective assistance of counsel claim:

> In this case, Mr. Newsome's attorney did not want to risk the negative effects of a test result that was not in their favor. If the testing ruled out Beale[r] as the shooter, Mr. Newsome's attorney would not be able to continue her defense strategy of third-party guilt. The third party guilt strategy is a reasonable defense strategy given the facts of the case, and foregoing the ballistics test was a reasonable choice to further that strategy. Ultimately, Mr. Newsome agreed with his attorney's strategy and her choice not to have the gun tested. For these reasons, the Court concludes that Mr. Newsome's argument is without merit.

*Id., doc. 10.* On November 8, 2012, the assigned United States District Judge adopted those findings and recommendations, and entered an Order and Judgment dismissing

Case 5:14-cv-00215-KGB   Document 13   Filed 06/05/15   Page 9 of 17

Newsome's § 2254 action with prejudice. *Id., docs. 14, 15*.

On December 6, 2012, the District Court denied Newsome's application for a certificate of appealability. *Id., doc. 18*. On April 29, 2013, the Eighth Circuit Court of Appeals denied Newsome's application for a certificate of appealability. *Id., doc. 27*.

On October 3, 2013, the Arkansas Supreme Court issued its decision in *Houston v. State*, 2013 Ark. 374 (per curiam), the parallel Rule 37 proceeding filed by Newsome's co-defendant, Armon Houston, *who made identical ineffective assistance of counsel claims that were based on identical facts*.[8] For example, during the joint Rule 37 hearing, Houston's attorney's testimony was *virtually identical* to the testimony of Newsome's trial counsel. He testified that he "chose not to test [Bealer's] gun because a negative result from the test would have effectively prohibited him from ethically trying to portray Bealer as the possible murderer and because he did not want to jeopardize what he saw as a strong case for the defense [based on alibi]." *Id.* at 4-5. As previously explained, "a negative result from the test [of Bealer's Glock]" would have had *no effect* on the ability of Houston's trial counsel to still make a viable argument that "Bealer [was] the possible murderer." *Id.*

---

[8]Just like Newsome, Houston argued in his Rule 37 petition that his counsel was constitutionally ineffective for not seeking ballistic testing of the .40 caliber Glock later found in Bealer's possession.

-9-

Unlike the decision it reached two years earlier in Newsome's Rule 37 appeal, the Court in *Houston* held that: (1) Houston's attorney's failure to seek testing of the firearm taken from Bealer was constitutionally ineffective assistance of counsel; *and* (2) Houston suffered *Strickland*-type prejudice. In doing so, the Court *explicitly rejected* the testimony of Houston's attorney that a "negative result from the [gun] test" would have greatly damaged his case:

> Based on what [Houston's] counsel described as a strong defense case, counsel's position that results showing that the gun was not the murder weapon would cause great damage was not well-founded. Even if the gun did not tie Bealer to the murder, [Houston] would have had the alibi defense he later chose to pursue, although unsuccessfully. If the gun did tie Bealer to the murder, then [Houston] would have had a viable third-party culpability defense as well. Negative results from testing the gun may have eliminated Bealer as a potential alternate suspect, but it would not have destroyed what counsel testified he viewed as a strong case that there was another killer.

*Id.* at 5. Thus, the Court in *Houston* granted Rule 37 relief and remanded the case to allow Houston to have a new trial. *Id.* at 5-6.

On January 22, 2014, Newsome filed a motion requesting the Arkansas Supreme Court to recall the mandate in his Rule 37 appeal, and grant him a new trial *on the same grounds it had granted relief to his co-defendant, Armon Houston*. *Doc. 6-11*.[9]

---

[9]Specifically, Newsome argued that the Arkansas Supreme Court's decision finding co-defendant Houston's lawyer ineffective, for failing to obtain ballistic testing of the subsequently recovered firearm, was in *direct conflict with* its rejection of the *identical legal argument* made

On February 20, 2014, the Arkansas Supreme Court entered a "Formal Order" summarily denying Newsome's motion to recall the mandate. *Doc. 6-13*. The Order noted only that: (1) Justice Danielson "would deny on the basis that *Houston v. State*, 2013 Ark. 374 (per curiam) was improvidently reversed and remanded"; and (2) three other justices "would take as a case." *Id.*

On June 3, 2014, Newsome initiated this § 2254 habeas action, which raises only one argument: The Arkansas Supreme Court "denied [him] due process of law by denying him relief [in his Rule 37 proceeding], while two years later granting relief to Houston on exactly the same facts and law." *Doc. 1, at 4*.

Respondent argues that: (1) Newsome's claim is not cognizable in federal habeas proceedings; (2) his petition constitutes an unauthorized successive § 2254 application; and (3) the Arkansas Supreme Court's denial of Newsome's motion to recall the mandate was not contrary to clearly established federal law. *Doc. 6*.

For the reasons discussed below, the Court recommends that, despite the manifestly disparate and inequitable treatment Newsome undoubtedly feels he received from the Arkansas Supreme Court, this §2254 habeas action be dismissed, because it is a "second or successive" habeas petition, which may only proceed if

---

by Newsome in his Rule 37 appeal. *Doc. 6-11*. Newsome asked the Arkansas Supreme Court to "recall the mandate issued on November 22, 2011, reverse the decision of the circuit court, and remand the matter for a new trial." *Id. at 7*.

Newsome first obtains permission from the Eighth Circuit Court of Appeals.

## II. Discussion

A "second or successive" habeas petition requires authorization from a federal court of appeals prior to filing. 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). Until an order of authorization is obtained from the appropriate court of appeals, a district court lacks jurisdiction to consider a successive petition. *Burton v. Stewart*, 549 U.S. 147, 152-53, 157 (2007).

Newsome does not dispute that this § 2254 habeas action is challenging the same judgment of conviction that he challenged in his first § 2254 habeas action. *See id.* at 153 (petition is successive where prisoner "twice brought claims contesting the same custody imposed by the same judgment of a state court"). However, he argues that this is "not a successive petition," which is subject to § 2244(b)(3)(A)'s preauthorization requirement, because the habeas claim he is raising is based on the Arkansas Supreme Court's denial of his motion to recall mandate on February 20, 2014, something that had *not yet arisen* when he filed his first habeas petition in 2011. *Doc. 5, at 5; Doc. 10, at 4.*

The United States Supreme Court has repeatedly stated that the phrase "second

or successive," as used in § 2244(b), is a "term of art" and "does not simply 'refe[r]

to all § 2254 applications filed second or successively in time.'" *Magwood v.*

*Patterson*, 561 U.S. 320, 331-32 (2010) (citing cases). Accordingly, it has recognized

several exceptions to § 2244(b)'s preauthorization requirement,[10] only one of which

is relevant here: Where the second petition raises a claim that was "unripe" at the time

of the first federal habeas petition. *Panetti v. Quarterman*, 551 U.S. 930, 943-47

(2007); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643-45 (1998).

   *Panetti* and *Martinez-Villareal* were both death penalty cases involving claims,

under *Ford v. Wainwright*, 477 U.S. 399 (1986), that the habeas petitioner was

incompetent to be executed. Such claims were not "ripe" at the time of the petitioners'

initial § 2254 applications because no execution was imminent.

   Of course, *broadly construed*, those two decisions could be used to characterize

as "non-successive" almost any habeas application that raises a new legal or factual

argument. Such a broad construction would effectively *nullify* other specific

provisions of § 2244(b), such as those contained in subpart (b)(2):

   A claim presented in a second or successive habeas corpus application
   under section 2254 that was not presented in a prior application shall be

---

   [10]*See Magwood*, 561 U.S. at 341-42 (second § 2254 petition was not subject to §
2244(d)'s restrictions where it challenged a new intervening judgment entered after
resentencing); *Slack v. McDaniel*, 529 U.S. 473, 485-86, 489 (2000) (second § 2254 petition was
not successive where first petition was dismissed for failure to exhaust, without adjudicating any
claims).

dismissed unless –

> (A)   the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii)  the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Thus, if the Court accepts Newsome's argument that this § 2254 action is "not successive," because it presents a new legal claim based on the Arkansas Supreme Court's decision in *Houston* and its later denial of Newsome's motion to recall, he would be permitted to "end run" § 2244(b)(2), which allows successive habeas claims based only on a "new rule of constitutional law, made retroactive to cases on collateral review by the [United States] Supreme Court."[11] *See Leal Garcia v. Quarterman*, 573 F.3d 214, 221 (5th Cir. 2009).

For these reasons, the United States Supreme Court has been careful to limit its

---

[11]*See Ruiz v. Norris*, 104 F.3d 163, 164-65 (8th Cir. 1997) (concluding that a habeas claim based on a recent Arkansas Supreme Court decision did not rely on a "new rule of constitutional law made retroactive to cases on collateral review by the [United States] Supreme Court," and thus did "not meet the requirements of Section § 2244(b)(2)(A) for new claims in second or successive petitions").

holdings in *Panetti* and *Martinez-Villareal* to only a narrow range of cases. *See Panetti*, 551 U.S. at 944-45 (concluding that the successive-petition provisions did not "govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe," and observing that the *Martinez-Villareal* holding was also premised on "the particular circumstances presented by a *Ford* claim").

In support of his argument that he should be allowed to pursue a second habeas petition, without preauthorization, Newsome cites *Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011), and *Singleton v. Norris*, 319 F.3d 1018 (8th Cir. 2003). Both of those cases are distinguishable.

In *Williams*, the petitioner (who had received the death penalty) challenged the constitutionally of the execution protocols in the Arkansas Method of Execution Act. Thus, that habeas action (challenging the means of execution) was not "second or successive" to an earlier habeas action that had asserted ineffective assistance of counsel claims attacking the underlying conviction and sentence. *See Williams*, 658 F.3d at 847, 853. Similarly, in *Singleton*, the petitioner (who also had received the death penalty) challenged an involuntary medication order. The Court held that the habeas claim was not successive because it did not arise until the petitioner was subject to an involuntary medication order and an execution date. *Singleton*, 319 F.3d

at 1023.[12] Unlike the petitioners in *Williams* and *Singleton*, Newsome has filed a second habeas action that collaterally attacks his underlying conviction on the same ground, ineffective assistance of counsel, that he advanced in his first § 2254 habeas action.[13]

The Court concludes that this is a "second or successive" § 2254 habeas action challenging Newsome's 2006 first degree murder conviction. While Newsome may have compelling arguments to support his request to be allowed to proceed with this action, only the Eighth Circuit Court of Appeals has the authority to grant him that permission. Thus, until Newsome obtains the required authorization from the Eighth Circuit, this Court lacks jurisdiction.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 1*, be DISMISSED, WITHOUT PREJUDICE, so that Newsome may seek authorization from the Eighth Circuit Court of Appeals, pursuant

---

[12]In support of the proposition that a habeas petition is not successive if it raises a claim "that had not arisen at the time of a previous petition," *Singleton* cited a Fifth Circuit case, *In re Cain*, 137 F.3d 234 (5th Cir. 1998). *Cain* was decided *before* any of the United States Supreme Court cases addressing the meaning of "second or successive." Moreover, the Fifth Circuit has since declined to "embrace ... an expansive interpretation" of *Cain* that "would run foul of the plain language of [§ 2244(b)(2)] and be incorrect." *Leal Garcia*, 573 F.3d at 220-21.

[13]The Arkansas Supreme Court's later decision in *Houston* certainly adds a harshly inequitable aspect to Newsome's legal position, but it does not alter the fact that Newsome's current § 2254 action is based on the same ineffective assistance of counsel that he raised in his earlier § 2254 action.

to 28 U.S.C. § 2244(b)(3)(A), to file a successive habeas petition.

IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be

DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases

in United States District Courts.

DATED THIS 5th DAY OF June, 2015.


_____
UNITED STATES MAGISTRATE JUDGE